1   Jennifer A. Golinveaux (SBN: 203056)
    jgolinveaux@winston.com
2   Thomas Kearney (SBN: 267087)
    tkearney@winston.com
3   WINSTON & STRAWN LLP
    101 California Street, 35th Floor
4   San Francisco, CA 94111
    Telephone:  415-591-1506
5   Facsimile:   415-591-1400

6   Michael S. Elkin (*pro hac vice forthcoming*)
    melkin@winston.com
7   WINSTON & STRAWN LLP
    200 Park Avenue
8   New York, NY 10166
    Telephone:  212-294-6700
9   Facsimile:   212-294-4700

10  Attorneys for Plaintiff
    COX COMMUNICATIONS, INC.
11

12                  UNITED STATES DISTRICT COURT

13           FOR THE CENTRAL DISTRICT OF CALIFORNIA

14                          WESTERN DIVISION

15

16  COX COMMUNICATIONS, INC.,          Case No. 2:21-cv-03756

17              Plaintiff,             COMPLAINT FOR:
                                       (1) DECLARATORY JUDGMENT,
18          v.                         (2) VIOLATION OF CALIFORNIA
                                       BUSINESS & PROFESSIONS CODE
19  BMG RIGHTS MANAGEMENT              § 17200, (3) ELECTRONIC TRESPASS
    (US) LLC and RIGHTSCORP, INC.,     TO CHATTELS, AND
20                                     (4) NEGLIGENCE
              Defendants.
21
                                       DEMAND FOR JURY TRIAL
22

23

24

25

26

27

28

**NATURE OF ACTION**

1.     Defendants BMG Rights Management (US) LLC ("BMG") and Rightscorp, Inc. ("Rightscorp") (collectively, "Defendants") have engaged in an abusive and unfair campaign of deliberately sending Plaintiff Cox Communications, Inc. ("Cox"), an internet service provider, tens of thousands of invalid notices of alleged copyright infringement with the goal of fabricating massive claims for secondary infringement against Cox. If Defendants were truly trying to notify Cox's subscribers of allegations of copyright infringement, they would be sending notices to Cox's registered agent, as required by law. Cox has informed Defendants of this numerous times, yet Defendants persist in misdirecting their notices to an improper email address. It is obvious that Defendants' tactic is a thinly veiled attempt to exploit the procedures set forth by the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA"), with the goal of leveraging their improper notices to attempt to extract windfall judgments for BMG and Rightscorp's other prospective clients. Their approach is improper and unlawful, and should be stopped. Cox seeks immediate and permanent redress for Defendants' intentionally wrongful actions.

2.     As an internet service provider ("ISP"), Cox is entitled to the protections afforded by the DMCA's "safe harbor" provisions, which immunize ISPs from monetary damages in secondary infringement claims where the ISP can demonstrate that it has adopted and reasonably implemented a policy that provides for the termination (in appropriate circumstances) of subscribers who are deemed repeat infringers.

3.     As part of Cox's fully compliant policy, Cox, like most ISPs, maintains a registered agent with the U.S. Copyright Office to receive notices of alleged infringement. Cox, again like most ISPs, receives millions of notices of infringement every year directed at the alleged actions of subscribers of its internet service, and Cox processes them in accordance with its policy. The DMCA makes clear, however, that for a notice of alleged infringement to be valid—that is, for the notice to be sufficient,

as a matter of law, to provide Cox notice of, or knowledge about, alleged copyright infringement—the rightsholder must send the notice to the ISP's registered agent at the address provided by the ISP.

4.     In 2017, Cox changed the address for its registered agent from abuse@cox.net to CoxDMCA@cox.net. Cox updated its website and the directory on the U.S. Copyright Office's website to reflect this change. Immediately thereafter, virtually every notice sender *except for Rightscorp* began to send notices to the updated address. Despite Cox's public notice, and despite multiple subsequent requests and warnings, Rightscorp persisted in sending on behalf of BMG tens of thousands of notices to Cox's old address. As Cox advised Defendants on numerous occasions, including through outside counsel, Rightscorp's actions rendered the notices invalid and unactionable as a matter of law.

5.     Defendants' brazen and deliberate non-compliance with the procedures set forth by the DMCA, in the face of Cox's repeated requests, smacks of tortious misconduct. Indeed, rather than comply with Cox's procedures like other rightsholders—so that Defendants' notices would be processed and forwarded to Cox's subscribers, potentially stemming the claimed infringement—Defendants knowingly and intentionally continue to send Cox notices at an invalid address.

6.     It is clear that Defendants have persisted in this blatant non-compliance in a calculated effort to manufacture evidence to support a massive secondary infringement action against Cox. Plainly, Defendants intend to claim that Cox's decision not to process these invalid notices renders it ineligible for the DMCA's safe harbor protections and, therefore, subject to potentially astronomical monetary damages. By improperly holding this threat over Cox, Defendants are causing it significant harm.

7.     Defendants' conduct puts Cox in an impossible position, giving it a Hobson's choice of either not processing the notices and facing a risk of massive secondary liability claims based on an allegedly defective process for handling notices

1 under the DMCA, or needlessly incurring costs and tying up computing resources by
2 processing the notices outside of its established procedures, bypassing Cox's systems
3 (in which Cox has invested millions of dollars) for handling notices of alleged copyright
4 infringement.

5        8.    Based on the allegations set forth herein, Cox seeks a declaration that:
6 (i) Defendants' notices of alleged copyright infringement sent to abuse@cox.net, which
7 is not the address of Cox's registered agent, are invalid under 17 U.S.C. §§ 512(c)(3)(A)
8 and 512(c)(B)(i); (ii) Defendants' notices sent to abuse@cox.net, which is not the
9 address of Cox's registered agent, are insufficient, as a matter of law, to provide Cox
10 notice of, or knowledge about, alleged copyright infringement; and (iii) Defendants'
11 persistent acts, in knowingly and deliberately sending notices to the incorrect address
12 with the purpose of fabricating massive infringement claims outside the protections of
13 the DMCA safe harbors, constitute actionable abusive and tortious misconduct from
14 which Cox is entitled to relief. Cox also asserts causes of action for violation of Section
15 17200 of the California Business & Professions Code based on Defendants' unfair
16 business practices; electronic trespass to chattels; and negligence. Cox seeks an order
17 enjoining Defendants from continuing these abusive practices, monetary damages, and
18 any other such further relief that the Court may deem just and proper.

19 **JURISDICTION AND VENUE**

20        9.    The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331
21 and 1338(a), as Cox's declaratory judgment claim arises under the Digital Millennium
22 Copyright Act, 17 U.S.C. § 512. An actual controversy exists between the parties
23 pursuant to 28 U.S.C. § 2201. The Court has supplemental jurisdiction over Cox's other
24 causes of action pursuant to 28 U.S.C. § 1367.

25       10.    This Court has personal jurisdiction over Rightscorp because, on
26 information and belief, Rightscorp's principal place of business is in the State of
27 California; Rightscorp is registered to do business, and does do business, in the State of
28 California; and Rightscorp has committed the wrongful acts alleged herein from the

State of California.

11.     This Court has personal jurisdiction over BMG because, on information and belief, BMG purposely availed itself of the forum by entering into an agreement with Rightscorp, which as alleged above is based in the State of California, to send notices of alleged copyright infringement to Cox from the State of California. Cox's claims arise out of actions taken by Rightscorp on BMG's behalf from the State of California. Under the doctrine of vicarious liability, Rightscorp's forum-related activities are imputed to BMG. Further, BMG has been registered to do business in the State of California since 2009 and, upon information and belief, maintains a continuous and systematic presence in the State of California. Indeed, upon information and belief, BMG maintains an office in the forum at 5670 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90036.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

13.     Plaintiff Cox is a Delaware company, with its principal place of business in Atlanta, Georgia.

14.     Upon information and belief, Defendant BMG is a Delaware company, with its principal place of business in New York, New York and an office in Los Angeles, California.

15.     Upon information and belief, Defendant Rightscorp is a Delaware company, with its principal place of business in Encino, California.

16.     When Rightscorp sends notices of alleged copyright infringement to Cox on behalf of BMG, Rightscorp acts as BMG's agent; accordingly, BMG is vicariously liable for the wrongful acts alleged herein against Rightscorp.

## **FACTUAL ALLEGATIONS**

### **Cox Updates Its DMCA Agent Contact Information**

17.     Prior to December 11, 2017, the email address of Cox's registered agent to receive notices of claimed infringement pursuant to the DMCA, 17 U.S.C. § 512(c), was abuse@cox.net. This email address was listed on Cox's website and Cox had registered it with the U.S. Copyright Office.

18.     The abuse@cox.net email address was the same one through which Cox also received communications regarding some thirty other potential abuses of its network, including notifications concerning such critical issues as hacking, spamming, phishing, identity theft, denial-of-service attacks, child exploitation, and other illegal actions. Responding to such issues is often time sensitive.

19.     In December 2017, Cox launched a new state-of-the-art system entirely dedicated to handling notices of alleged copyright infringement received from rightsholders and their agents, such as Defendants. Cox invested, and continues to invest, millions of dollars in building and maintaining this highly automated, dedicated system. Because the system exclusively handles notices of alleged copyright infringement, Cox established a dedicated email address for such complaints: CoxDMCA@cox.net. Cox continued (and continues) to use the abuse@cox.net email address to receive complaints regarding the non-copyright-related threats ("abuse complaints") noted above. Such non-copyright-related abuse notices properly sent to the abuse@cox.net address are processed through a different Cox system (the "abuse system"). Notices of alleged copyright infringement, on the other hand, are processed by a third-party vendor that directly receives notices sent to CoxDMCA@cox.net.

20.     After Cox launched its dedicated system, it notified rightsholders and their agents that the abuse@cox.net address should no longer be used for notices of alleged copyright infringement. Cox instructed the rightsholders and their agents to instead send notices to CoxDMCA@cox.net by updating its public-facing website and notifications to reflect this change.

21.     Cox also provided this new contact information, including the new email address for receiving notices of claimed copyright infringement, to the U.S. Copyright Office, as required by the DMCA at 17 U.S.C. § 512(c)(2). The U.S. Copyright Office listed the contact information for Cox's DMCA agent, including the new CoxDMCA@cox.net email address, in the public electronic directory of DMCA agents that the U.S. Copyright Office maintains.

**Defendants Persist in Sending Invalid Notices of Alleged Infringement**

22.     Following Cox's update, virtually every rightsholder and agent began to use the new email address—***except for Defendants***. Defendants continued to send Cox notices to the old—wrong—email address.

23.     On October 2, 2018, Cox's Senior IP Counsel sent an email to Rightscorp at the address support@rightscorp.com, notifying Rightscorp that "Cox ha[d] changed the email address where Rightsholders, or Designated Agents on their behalf, are to send their allegations of copyright infringement pursuant to the DMCA. Henceforth please send all notices to CoxDMCA@cox.net. This email address is now the email address of record on file with the US Copyright Office for DMCA related communications." Cox requested confirmation of receipt of the notification. Although Rightscorp did not respond, Cox did not receive an error message in response to the email. Upon information and belief, support@rightscorp.com is a valid email address of Rightscorp to this day.

24.     On January 22, 2019, Cox's Senior IP Counsel sent another email to Rightscorp, this time both to the address support@rightscorp.com and contact@rightscorp.com. Cox referenced its prior October 2, 2018 email and again notified Rightscorp that "Cox has changed the email address where Rightsholders, or Designated Agents on their behalf, are to send their allegations of copyright infringement pursuant to the DMCA. Henceforth please send all notices to CoxDMCA@cox.net. This email address is the address of record on file with the US Copyright Office and should be used for DMCA related communications." As with the

prior email, Cox requested confirmation of receipt of the notification. Again, while Rightscorp did not respond, Cox did not receive an error message in response to these emails either. Upon information and belief, contact@rightscorp.com is also a valid email address of Rightscorp to this day.

25.     After it received this second email, however, Rightscorp stopped sending Cox notices. Accordingly, on February 15, 2019, Cox's Senior IP Counsel advised Rightscorp that it had not received any notices of alleged infringement from Rightscorp (to any address) and requested that Rightscorp confirm that it was sending notices to the correct address. Cox wanted to ensure that if Rightscorp had notices to send, Cox would receive them and thus process them. Rightscorp did not respond, although Cox did not receive an error message in response to its email.

26.     This reprieve was short-lived. In July 2019, Rightscorp resumed sending Cox notices to the wrong email address. In response, on August 5, 2019, Cox's Senior IP Counsel advised Rightscorp that it "ha[d] been sent no less than four notifications that Cox no longer receives take-down notices at the abuse@cox.net account, and instead all notices should be sent to CoxDMCA@cox.net." Cox again requested confirmation of receipt of its email but Rightscorp did not respond, although, as with its prior emails, Cox did not receive an error message in response.

27.     During the ensuing months, Rightscorp wrongfully continued to barrage Cox with tens of thousands of notices, ignoring Cox's repeated requests to send the notices to the correct address.

28.     Although it was under no obligation to do so, during this time, Cox configured its email servers so that Defendants' notices erroneously sent to abuse@cox.net would be forwarded to CoxDMCA@cox.net, the correct address, and processed in accordance with Cox's policies, as though they had been properly sent. Cox did so in order to attempt to mitigate the harm wrought by Defendants' actions and address their allegations of claimed copyright infringement.

29.    Defendants' abusive actions harmed Cox. Among other things, Defendants' persistence in sending notices of alleged infringement to the wrong email address impacted Cox's ability to fully transition that address to be operationally devoted to handling other forms of abuse complaints. Further, the sheer volume of notices Defendants sent to this address, and the way in which Cox processed them, consumed Cox's computer and human resources.

30.    On June 11, 2020, Cox's outside counsel sent Rightscorp a letter via certified mail to the Encino, California business address that Rightscorp had registered with the California Secretary of State, as well as to Rightscorp's agents for service of process registered with the Delaware Department of State (Rightscorp's state of incorporation) and the California Secretary of State (Rightscorp's principal place of business). Cox also sent a copy of the letter via email to the "Contact Us" email address listed on Rightscorp's website.

31.    In this letter, counsel again explained on behalf of Cox that Cox "has registered an agent to receive notices of claimed copyright infringement from rights holders or their agents" and that "[s]uch notices are effective under the DMCA only if a notice sender submits them to a service provider's designated agent, using the appropriate contact information." Cox's counsel's letter further explained that the email address for Cox's designated DMCA agent has been changed to CoxDMCA@cox.net, and noted that this information was available on Cox's website and had been provided to the U.S. Copyright Office. Cox's counsel also advised Rightscorp that "[e]ffective immediately, Cox will no longer receive or process notices of claimed infringement sent to the abuse@cox.net email address. Notices of claimed infringement submitted to that email address are insufficient, as a matter of law, to provide Cox notice of, or knowledge about, alleged copyright infringement."

32.    Since Cox's counsel had sent this letter to each of the three street addresses for Rightscorp via certified mail, it was able to confirm that each copy of the letter was actually received and signed for. In addition, Cox did not receive an error message in

response to the email it sent (attaching a copy of the letter) to Rightscorp's email address of record.

33.     Although Rightscorp never responded to this letter, it stopped sending Cox notices for several months, from July 2020 through December 18, 2020.

34.     During this lull in Rightscorp notices, Cox reconfigured its email servers such that any notices of alleged copyright infringement that might be sent to abuse@cox.net would no longer be forwarded to CoxDMCA@cox.net— CoxDMCA@cox.net, after three years, would finally become the fully functional and automated system for handling notices of alleged infringement that Cox had designed. This step was consistent with Cox's June 2020 notification to Rightscorp that Cox would no longer process notices of alleged copyright infringement sent to abuse@cox.net. And, indeed, Rightscorp had not sent any notices to Cox (at any address) following that June 2020 notification.

35.     Another part of this reconfiguration was that Cox would send a "bounce-back" email to any sender of a notice of alleged copyright infringement to the abuse@cox.net address, which informed the sender that Cox would not process the notice and of the proper address to which to direct such notices.

36.     However, shortly after Cox reconfigured its system, and implemented bounce-back notifications, Defendants resumed sending large numbers of notices to the wrong address. Indeed, over just a few weeks between December 2020 and January 2021, Rightscorp sent Cox more than 50,000 notices.

37.     On March 26, 2021, Cox's outside counsel sent Rightscorp another letter, again via certified mail to the Encino, California business address Rightscorp had registered with the California Secretary of State, as well as Rightscorp's agents for service of process registered with the California Secretary of State and the Delaware Department of State. Cox's counsel again sent a copy of this letter via email to the "Contact Us" address listed on Rightscorp's website. In addition, Cox's counsel sent copies of the letter to the street address that Rightscorp had provided in its notices and

1  the email address from which the notices were sent.

2      38.    As with its prior letter, since Cox's counsel had sent this letter to

3  Rightscorp's street addresses via certified mail, it was able to confirm that Rightscorp

4  received a copy through its registered agents for service of process in both California

5  (its principal place of business) and Delaware (its state of incorporation). In addition,

6  Cox did not receive an error message in response to the email it sent to

7  support@righstcorp.com attaching a copy of the letter. Though the previous letter to

8  Rightscorp's business address had been delivered and accepted, this time the letter was

9  marked "Return to Sender" and returned as undeliverable, even though the mailing

10  address was (and remains) the business address that Rightscorp has on file with the

11  California Secretary of State. This time, Cox's counsel also sent a copy of the letter to

12  the street address Rightscorp provided on its notices of claimed infringement to Cox.

13  But this letter too was marked "Return to Sender" and returned as undeliverable.

14      39.    In this letter, Cox again advised Rightscorp that it "no longer processes

15  notices of claimed infringement sent to the previous abuse@cox.net email address," and

16  reiterated that "[n]otices of claimed infringement submitted to that email address are

17  insufficient under the DMCA to provide Cox notice of, or knowledge about, alleged

18  copyright infringement." Cox further advised Rightscorp that it was also sending a copy

19  of the letter to BMG to ensure that BMG was aware that Rightscorp was sending

20  improper notices on its behalf, and that it understood that such notices had not been and

21  would not be processed. Cox sent that letter via U.S. mail to BMG's registered agent

22  for service of process in the State of New York (its state of incorporation).

23      40.    Although neither Rightscorp nor BMG responded to this letter, in the two

24  weeks after it was sent (by both certified U.S. mail and email), Rightscorp sent more

25  than 30,000 notices to Cox to the improper abuse@cox.net address.

26      41.    Since December 2020, when Cox stopped forwarding Defendants'

27  improper notices to CoxDMCA@cox.net, and Cox had begun sending bounce-back

28  notifications, Defendants have sent tens of thousands of notices to Cox, all of which are

improper and legally invalid under the DMCA. Indeed, in the month of April 2021 alone, Rightscorp sent Cox more than 75,000 invalid notices.

42.     Cox has been forced to expend significant resources in order to identify and remove these notices from its abuse@cox.net inbox and close out and archive the internal tickets generated by these defective emails. Because Cox no longer forwards these notices to CoxDMCA@cox.net, the improper notices must be processed through Cox's systems that are supposed to be dedicated to handling non-copyright abuse complaints, a process which needlessly consumes both computing and human resources. As is widely recognized, including *specifically* with respect to Rightscorp's notoriously abusive and defective practices, ISPs can incur costs (as Cox does) in processing notices even if they are deemed defective or invalid.[1]

43.     The harm Defendants have caused to Cox is ongoing, as Cox continues to needlessly incur expenses, all the while facing the uncertainty of an ever-mounting risk of litigation. All of this is due to Defendants' persistence in flooding Cox's system with their defective notices despite repeated warnings to correct their actions.

## Defendants' Improper Attempt to Fabricate Mass Infringement Claims
## Against Cox

44.     Upon information and belief, Rightscorp has been sending notices to ISPs on behalf of rightsholders since at least 2011. During this time, Rightscorp has sent tens of millions of notices to ISPs on behalf of BMG alone.

45.     Rightscorp's business plan is simple, and corrupt: it floods an ISP with an enormous number of notices, each of which purports to accuse an internet subscriber of copyright infringement. It demands that the ISP forward the notices to the accused subscribers. And with each notice that is forwarded, Rightscorp attempts to extort the receiving subscriber into making a monetary settlement with Rightscorp, by threatening

---

[1] *See* Jennifer Urban, et al., *Notice and Takedown in Everyday Practice* (2016), available at https://papers.ssrn.com/sol3/Delivery.cfm/SSRN_ID2938642_code1788303.pdf?abstractid=2755628&mirid=1.

them with loss of internet service, federal litigation, and potentially ruinous statutory damages.

46.     Rightscorp's notoriously abusive tactics on behalf of BMG are well-documented. For instance, upon information and belief, in 2016, Rightscorp settled for $450,000 class-action claims based on its abusive efforts to extract settlements through repeated calls, emails, serial frivolous subpoenas, and other improper actions directed at ISP subscribers, which were alleged to have been taken on behalf of its client BMG. *See Karen J. Reif et al. v. Rightscorp, Inc. et al.*, Case 2:14-cv-09032 (C.D. Cal.).

47.     Upon information and belief, Rightscorp has improperly extracted substantial sums from internet subscribers for its own pecuniary gain through its extortionate practices.

48.     Indeed, upon information and belief, because of Rightscorp's unsavory and illegal practices, which it brazenly promotes, many rightsholders have refused to authorize it to send notices on their behalf, for fear of recrimination from the public.

49.     This reputation notwithstanding, Rightscorp also markets its notice records to rightsholders, offering them as a basis to mount massive secondary infringement cases against ISPs, such as in *BMG Rights Mgmt. (US) LLC et al. v. Cox Enterprises, Inc. et al.*, Case 1:14-cv-01611-LO-JFA (E.D. Va.), *UMG Recordings, Inc. et al. v. Grande Communications Networks LLC et al.*, Case 1:17-cv-00365-LY-AWA (W.D. Tex.), and *UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC, et al.*, Case 3:19-cv-17272-MAS-ZNQ (D.N.J.).

50.     Upon information and belief, one of Rightscorp's practices is to flood ISPs' systems with duplicative notices for the exact same alleged infringement—for example, sending multiple notices, each regarding the same subscriber and the same content, all within the same day. Rightscorp engages in this tactic to make it *appear* that such subscribers are "repeat infringers." On information and belief, its goal in doing this is to attempt to compromise the ISPs' entitlement to the DMCA safe harbor protections, by making it appear (though falsely) that infringement is rampant—when

in reality, Rightscorp is double, triple, quadruple, and *n*-tuple counting each instance of supposed infringement. Upon information and belief, this likely is the case with the vast majority of the notices that Defendants have sent to Cox.

51.     Upon information and belief, Rightscorp markets itself to prospective clients with claims that its notices can serve as the basis for windfall damages in massive infringement suits against ISPs.

52.     Upon information and belief, Rightscorp has refused to comply with Cox's request to send notices to the correct CoxDMCA@cox.net email address in a thinly veiled effort to fabricate potentially massive secondary infringement claims against Cox for Rightscorp's client BMG and other prospective clients.

53.     Upon information and belief, BMG intends to utilize Rightscorp's tens of thousands of improper notices to file massive, trumped-up secondary infringement claims against Cox.

54.     Upon information and belief, Defendants understand that if they had sent notices to the correct address, Cox would have processed the notices in accordance with its fully compliant DMCA policies and Defendants would not otherwise have claims against Cox.

55.     Indeed, if Defendants' true intent had been to put Cox on notice of allegations of infringement by Cox's subscribers so that Cox could do something about it, Defendants would have sent their notices to the correct address so that they could be processed by Cox—as required by the DMCA, and as Cox has repeatedly requested.

56.     Upon information and belief, Defendants intentionally and knowingly sent notices to the incorrect address because they were *relying* on Cox's statement that it did not and would not process those tens of thousands of invalid notices. On information and belief, Defendants hope to fabricate an argument that Cox should not be entitled to DMCA safe harbor protection because it failed to appropriately terminate putative "repeat infringers," as provided by 17 U.S.C. § 512(i)(1)(A).

57.     Absent a DMCA safe harbor, ISPs can face potentially enormous liability

in mass secondary infringement cases, so the threat of losing safe harbor—even a trumped-up threat—can cause serious harm.

## CLAIM ONE

### FOR A DECLARATORY JUDGMENT THAT DEFENDANTS' NOTICES ARE INVALID AS A MATTER OF LAW

58.    Cox repeats and re-alleges each and every allegation contained in paragraphs 1 through 57 as if fully set forth herein.

59.    Between in or around December 2017, when Cox updated its agent address, and the present, Defendants have sent Cox hundreds of thousands of notices to the incorrect address, abuse@cox.net.

60.    After developing and implementing a process for dealing with notices of alleged infringement separate and apart from its predecessor system, and since June 2020, Cox has represented to Defendants that it would not process these notices, and informed Defendants that the notices are both invalid under 17 U.S.C. §§ 512(c)(3)(A) and 512(c)(B)(i), and insufficient, as a matter of law, to provide Cox notice of, or knowledge about, alleged copyright infringement.

61.    Defendants have persisted in sending Cox tens of thousands of notices to the incorrect address and have never responded to Cox's requests for confirmation of receipt of its many messages informing Defendants that the address to which they are sending notices is incorrect. Even though Cox has confirmation that many, if not all, of these communications were received, Defendants have failed to acknowledge Cox's change in any way. Indeed, after an approximate six-month lull in receiving any notices from Rightscorp, Cox finally fully automated its processes at CoxDMCA@cox.net, only to find that Rightscorp resumed sending notices to the incorrect address, flooding Cox with over 100,000 such notices.

62.    Defendants' notices are invalid under 17 U.S.C. §§ 512(c)(3)(A) and 512(c)(B)(i) and are insufficient, as a matter of law, to provide Cox notice of, or knowledge about, alleged copyright infringement. Based on Cox's well-founded belief

that these notices are legally invalid, Cox has ceased processing them in accordance with its policies.

63.     Defendants' failure to respond to Cox's statements regarding the invalidity of their notices, and Defendants' actions in continuing to send notices despite Cox's repeated communications, demonstrate that it is Defendants' position that their notices are valid under 17 U.S.C. §§ 512(c)(3)(A) and 512(c)(B)(i). Both Defendants' actions, and the unambiguous content of their notices, demonstrate their belief that the notices provide Cox notice of, or knowledge about, alleged copyright infringement.

64.     An actual controversy exists as to the validity of the notices sent to the incorrect address of abuse@cox.net, under 17 U.S.C. §§ 512(c)(3)(A) and 512(c)(B)(i), and whether those notices are sufficient, as a matter of law, to provide Cox notice of, or knowledge about, alleged copyright infringement.

65.     This controversy is substantial and of sufficient immediacy to warrant the issuance of a declaratory judgment because Cox anticipates that at any moment BMG may file massive secondary infringement claims against it, based on Rightscorp's defective notices. Moreover, Cox anticipates that Rightscorp may provide these notices to other prospective clients whose works may be implicated in Rightscorp's notices, and that those clients will in turn file at any moment massive secondary infringement claims against Cox.

66.     Defendants have forced Cox into a Hobson's choice between not processing Defendants' defective notices, and potentially facing massive claims of secondary infringement based on an alleged failure to employ an appropriate policy under the DMCA, or to process the notices, which has and will continue to cause it to incur significant and needless expense.

67.     Accordingly, Cox seeks a declaration as follows:

a.     that Defendants' notices that are sent to abuse@cox.net, which is not the address of Cox's registered DMCA agent, are invalid under 17 U.S.C. §§ 512(c)(3)(A) and 512(c)(B)(i);

b.     that Defendants' notices that are sent to abuse@cox.net, which is not the address of Cox's registered DMCA agent, are insufficient, as a matter of law, to provide Cox notice of, or knowledge about, alleged copyright infringement; and

c.     that Defendants' persistent acts in knowingly sending notices to abuse@cox.net, which is not the address of Cox's registered agent, with the purpose of fabricating massive infringement claims that are alleged to be outside the protections of the DMCA safe harbor, constitute actionable abusive and tortious conduct, from which Cox is entitled to relief.

## CLAIM TWO

**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200**

68.     Cox repeats and re-alleges each and every allegation contained in paragraphs 1 through 67 as if fully set forth herein.

69.     Section 17200 of the California Business & Professions Code prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

70.     Defendants have engaged in unfair business practices by continuing to send notices to the wrong address after being repeatedly informed not to, and even "doubling down" in recent months once they were informed that the notices would no longer be processed. Defendants' unfair practices are compounded by the fact that they have failed to respond or even acknowledge receipt of Cox's numerous requests that they cease this abusive, counterproductive, and injurious practice.

71.     Cox has been injured in fact by Defendants' actions. Indeed, from December 2017 through June 2020, Cox processed Defendants' notices even though they were sent to abuse@cox.net, which was not the address of Cox's registered agent. During that time, that email address was properly used to process other types of abuse complaints, including those regarding critical non-copyright security threats, notices of criminal activity, and other urgent, time-sensitive issues. Defendants' actions injured Cox by forcing Cox to expend time, money, and other resources to address Defendants'

invalid notices, which also impacted Cox's ability to devote those resources to other, proper uses.

72.     Further, after June 2020, Defendants were advised that notices of alleged infringement sent to abuse@cox.net would no longer be processed. Upon information and belief, this put Defendants on notice that Cox would not forward these notices to its subscribers or otherwise take any action with respect to them, which undermines Defendants' intent of putting subscribers on notice of these claims of infringement. Yet Defendants persisted in sending notices to that address.

73.     Indeed, had Defendants truly desired to curb infringement by sending valid notices to Cox so that Cox could in turn forward them to its subscribers, Defendants would have sent notices to the correct address. Instead, on information and belief, Defendants engaged in this unfair and unconscionable practice of sending tens of thousands of notices to Cox after Cox stated that it would no longer process these notices, so that Defendants could attempt to fabricate a scenario that would result in Cox being deprived of the DMCA safe harbor protections and thereby exposed to massive liability in secondary infringement claims brought by BMG and other rightsholders. These actions are both unethical and oppressive.

74.     Cox has been injured by incurring significant expenses; expending human and computing resources to process and address Defendants' invalid notices; and navigating uncertainly regarding its legal standing with respect to BMG and other rights holders because of Defendants' sham notices.

75.     The public has also been harmed by Defendants' actions, as complaints regarding alleged infringement are not properly being channeled to Cox's systems for handling such notices, so that Cox can process them; furthermore, Defendants' actions needlessly consume resources intended to address critical non-copyright security threats, which also bear directly on the safety and welfare of the public.

76.     Further, Defendants' actions undermine public policy, and the careful balance struck by the DMCA with respect to obligations of rightsholders and their

agents like Defendants on the one hand, and ISPs like Cox on the other. Defendants' brazen abuse of this system and subversion of public policy only serves to harm the parties' respective industries and the public they serve, including by compromising an ISP's ability to reasonably operate its business while also supporting the protection of copyrights. Rightscorp's abusive pattern of conduct serves no legitimate business interest and has no commercial justification that might outweigh its harmful effects.

77.    Cox has suffered and will continue to suffer irreparable harm, and its remedy at law is not adequate to compensate it for injuries inflicted by Defendants. Accordingly, Cox is entitled to injunctive relief.

78.    Cox is entitled to any other such further relief that the Court may deem just and proper.

## CLAIM THREE

### ELECTRONIC TRESPASS TO CHATTELS

79.    Cox repeats and re-alleges each and every allegation contained in paragraphs 1 through 78 as if fully set forth herein.

80.    Beginning in or around December 2017, Cox informed rightsholders that it would no longer accept notices of alleged copyright infringement at its email address abuse@cox.net, and that they should send notices to CoxDMCA@cox.net, as indicated on its website and the directory on the U.S. Copyright Office's website.

81.    Beginning in or around October 2018, after Defendants failed to send notices to the updated address, Cox expressly informed Defendants through multiple direct communications that they should cease sending notices of alleged infringement to abuse@cox.net, that that email address was not intended for such notices, and that they should instead send notices to the correct address.  Defendants still failed to comply.

82.    On both June 11, 2020 and March 26, 2021, Cox, through its outside counsel, again advised Defendants that notices sent to abuse@cox.net were improper and invalid as a matter of law, that they should stop sending notices to that address, and

1    that such notices would no longer be processed.

2        83.    Despite Cox's numerous requests, Defendants have continued to send Cox

3    tens of thousands of notices to abuse@cox.net.

4        84.    Based upon information and belief, Rightscorp received Cox's numerous

5    communications regarding Rightscorp sending notices to an outdated address and,

6    accordingly, its act of sending these tens of thousands of notices to Cox was intentional.

7        85.    Further, Defendants were well aware that Cox did not accept notices of

8    alleged infringement at abuse@cox.net because in addition to Cox's numerous direct

9    communications, as of December 2020, Defendants have been receiving email bounce

10   back notifications, which informed them that Cox was not processing their invalid

11   notices as they were being sent to the wrong address. Indeed, in the month of April 2021

12   alone, Rightscorp sent Cox more than 75,000 notices despite these warnings.

13       86.    Thus, Defendants knew that their intentional act of sending these tens of

14   thousands of notices to Cox at abuse@cox.net was done without authorization.

15       87.    Defendants' constant barrage of unauthorized emails interfered with Cox's

16   possessory interest in its email servers and computing systems and, separately, its ability

17   to operate its system for processing non-copyright abuse complaints. Cox was unable

18   to dedicate the abuse@cox.net address to other abuse complaints, such as those

19   concerning non-copyright security threats, notices of criminal activity, and other urgent,

20   time-sensitive issues. Defendants' incursions prevented Cox from fully operating its

21   computing systems in the way that it had intended, and consumed human and computing

22   resources. Cox has been forced to needlessly dedicate time, money, and other resources

23   to deal with Defendants' improper notices. This has caused harm and injury to Cox.

24   This harm and injury was proximately caused by Defendants' intentional actions of

25   sending tens of thousands of emails to an improper address without authorization. In

26   short, Rightscorp's endless barrage of notices intentionally directed at an outdated email

27   address not utilized for these purposes has constituted a years-long incursion on Cox's

28   systems.

88.     Cox has suffered and will continue to suffer irreparable harm and injury, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants. Accordingly, Cox is entitled to injunctive relief.

89.     Cox additionally seeks an award of compensatory and punitive damages to be proven at trial and any other such further relief that the Court may deem just and proper.

## CLAIM FOUR

### NEGLIGENCE

90.     Cox repeats and re-alleges each and every allegation contained in paragraphs 1 through 89 as if fully set forth herein.

91.     Defendants owe a duty to exercise reasonable care in sending notices of alleged infringement to Cox, and otherwise in enforcing copyrights and engaging with ISPs, and, separately, subjecting ISPs like Cox to massive liability for secondary infringement.

92.     As part of this duty to exercise reasonable care, Defendants are required to send notices of alleged infringement in accordance with an ISP's reasonable policies, including that the notices be sent to the ISP's registered agent at the address provided by the ISP.

93.     Here, Defendants breached, and continue to breach, that duty by repeatedly failing to send notices to Cox's registered agent at the address Cox provided and registered with the U.S. Copyright Office.

94.     As a result of Defendants' breach of their duty of reasonable care, Cox has been injured because it has been forced to dedicate time, money, and other resources to deal with Defendants' improper notices, which harmed Cox by impacting resources and systems that were intended to deal with non-copyright security threats, notices of criminal activity, and other urgent, time-sensitive issues. This ongoing breach has caused Cox actual damage.

## JURY TRIAL DEMAND

Cox demands a trial by jury of all issues that are so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Cox Communications, Inc. respectfully requests that this Court enter judgment as follows:

a. A judgment according to the declaratory relief sought as against each Defendant;

b. An injunction according to the relief sought as against each Defendant, including pursuant to California Business & Professions Code § 17203;

c. For damages, in an amount up to the maximum provided by law, arising from Defendants' (i) electronic trespass to chattels, and (ii) negligence;

d. Ordering Defendants to pay Cox's reasonable attorneys' fees and costs incurred in connection with this action; and

e. Such other and further relief to which Cox may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

Dated: May 3, 2021

Respectfully submitted,

By: /s/ Jennifer A. Golinveaux
Jennifer A. Golinveaux (SBN: 203056)
jgolinveaux@winston.com
Thomas Kearney (SBN: 267087)
tkearney@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: 415-591-1506
Facsimile: 415-591-1400

Michael S. Elkin (*pro hac vice forthcoming*)
melkin@winston.com
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: 212-294-6700
Facsimile: 212-294-4700

Attorneys for Plaintiff
COX COMMUNICATIONS, INC.